FILED

09/20/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0721

DA 15-0721

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 232

LEE FOSS and FOSS REALITY, INC.,
a Montana Corporation,

        Plaintiffs and Appellees,

   v.

SEAN F. MELTON,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
                  In and For the County of Ravalli, Cause No. DV-13-392
                  Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                David C. Berkoff, Berkoff Law Firm, P.C., Missoula, Montana

        For Appellees:

                John D. Greef, Attorney at Law, Hamilton, Montana

                      Submitted on Briefs:  June 22, 2016

                                Decided:  September 20, 2016

Filed:

                            _____
                                       Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     In 2007, Sean Melton, an authorized manager and member of TJS Investment Properties,[1] purchased four parcels of property in Darby, Montana.  Lee Foss, through Foss Realty, represented seller Len Wallace.  Foss's commission on the sale was $112,000 which Melton contractually agreed to pay.  Subsequently, Foss sued Melton for the unpaid balance of the commission.  Melton countered that Foss had failed to comply with the "exhaustion of remedies" clause in the contract.  Both parties filed motions for summary judgment.  The Twenty-First Judicial District Court granted Foss's motion and denied Melton's.  The court awarded attorney's fees to Foss.  Melton appeals.  We affirm in part and reverse and remand in part.

## ISSUES

¶2     A restatement of the issues on appeal is:

¶3     Did the District Court err in granting Foss's motion for summary judgment?

¶4     Did the District Court abuse its discretion in awarding attorney's fees to Foss?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     In February 2007, Melton entered into contracts purchasing the former Big Velvet Elk Ranch consisting of four parcels of property in Darby, Montana, and owned by Len Wallace.  Two of the parcels were purchased for $140,000 on a Contract for Deed, and the other two parcels were purchased for approximately $1.5 million on an Agreement to Sell and Purchase.  The Contract for Deed required Melton to pay Foss $112,000 in

---

[1] Unless otherwise specified, we refer to Melton and TJS collectively as Melton.

commission. In accordance with the Contract, Melton paid Foss $5,000 at closing and agreed to pay the remaining $107,000 at a future date when Melton sold purchased parcels. Consequently, Foss held a commission lien on some of the parcels purchased by Melton.

¶6 In August 2009, Melton sold the property to Blue Vault, a Wyoming limited liability corporation, owned and operated by Richard S. Brown, III. Blue Vault's California lending bank, EH National, required that Foss release his commission lien before the sale between Melton and Blue Vault could close. Foss agreed to release his lien in exchange for three separate promissory agreements. The first agreement obligated Blue Vault to pay Foss's $107,000 commission. Blue Vault paid $16,050 at closing and agreed to pay Foss approximately $380 per month until the commission debt was paid in full. The second agreement required Brown to pay Blue Vault's debt in the event Blue Vault defaulted. The third agreement—and the subject of this lawsuit—obligated Melton to pay Foss any remaining commission not paid by Blue Vault or Brown.

¶7 The third agreement, entitled the Limited Contingent Guarantee (Guarantee), provided in relevant part that Melton would guarantee the performance of "each and every obligation" imposed on Blue Vault and Brown. It expressly stated that Foss could execute against Melton "only in the event of default [by Blue Vault and Brown] and only to the extent that [Foss is] unable to recover all sums due and owing." It further required that Foss must "exhaust all other remedies available to [him] under the law . . . before executing upon the personal guarantee of Melton."

3

¶8     In late 2010, Blue Vault defaulted under its contract with Foss.  In accordance with the contract, Foss notified Blue Vault and Brown of the default and filed suit in November 2010 in the Twenty-First Judicial District Court, Ravalli County, seeking payment of the $90,950 balance of the promissory note, plus accrued interest.  In March 2011, while the lawsuit was pending, Brown died.  In June 2011, Foss obtained a Montana judgment against Blue Vault in the amount of $90,950, plus accrued interest.[2]

¶9     In August 2011, Melton alerted Foss to the existence of a Blue Vault bank account at EH National, which purportedly contained sufficient funds to pay Blue Vault's judgment to Foss.  Melton indicated that a $26,000 automatic monthly withdrawal was being drafted from the account.  In October, Melton followed up, encouraging Foss to move quickly against the bank account to guarantee enforcement of the judgment.  He also offered to pursue enforcement of Foss's judgment in exchange for a waiver of Foss's right to pursue recovery against Melton in the event Melton was unsuccessful in collecting the judgment.

¶10     In late November 2011, Foss began looking for a California attorney to represent him in filing his Montana judgment in California and retained counsel in January 2012. In February 2012, Foss obtained a California sister-state judgment against Blue Vault in the amount of $101,727.83.  Also in February, Melton and Blue Vault entered into a

---

[2] *Foss v. Blue Vault, LLC*, Cause No. DV-10-638 (Mont. Dist. Ct. Ravalli Cnty. June 29, 2011).

4

Stipulated Judgment in favor of Melton in the amount of $792,439.[3] On May 30, 2012, Foss levied on a Blue Vault account at EH National and collected $46,300.

¶11 In August 2012, EH National filed a foreclosure action on the Darby ranch property. Foss and Melton's company, TJS, were named co-defendants based upon their inferior judgments against Blue Vault.[4] Foss failed to appear and the bank secured a default judgment against him. Subsequently, Melton abandoned efforts to collect on his inferior judgment in the foreclosure proceeding and received nothing toward his judgment. EH National prevailed in its foreclosure action against Blue Vault, obtaining a judgment in excess of $4 million. The ranch property was ordered sold at a sheriff's sale.

¶12 In September 2013, Foss filed the complaint in this matter seeking a judgment of $55,120 plus interest from Melton pursuant to the Guarantee. Melton moved for summary judgment in February 2015 arguing that Foss had not exhausted his available remedies against Blue Vault and Brown and therefore could not prevail in the action against Melton. Melton claimed the following deficiencies on Foss's part: (1) after securing judgment against Blue Vault in Montana, Foss delayed pursuing Blue Vault in California until Blue Vault's bank account contained insufficient funds to pay Foss's judgment; (2) Foss failed to force multiple probate actions of Brown's estate in three states in an effort to obtain a judgment against the estate which purportedly included two California homes; (3) Foss failed to appear in EH National's foreclosure action thereby

---

[3] *TJS Investment Props., LLC v. Blue Vault, LLC*, Cause No. DV-11-636 (Mont. Dist. Ct. Ravalli Cnty. February 22, 2012).

[4] *EH Nat'l Bank v. Bluevault, LLC*, Cause No. DV-12-390 (Mont. Dist. Ct. Ravalli Cnty. June 2013).

failing to assert his prior interest and doing nothing to protect his interest in his judgment; and (4) following Brown's March 2011 death, Foss failed to amend his lawsuit against Brown and Blue Vault to include Foss's granddaughter, Erika Brown, who had been granted power of attorney over Blue Vault's finances.

¶13 Foss filed a cross-motion for summary judgment in March 2015 arguing that he had exhausted all remedies against Blue Vault and Brown that were "practical for him to pursue." He asserted that he had timely filed suit against Blue Vault and Brown and obtained a Montana judgment against Blue Vault but that Brown died before he could obtain a judgment against him. Foss claimed that while it took time to find and retain a California attorney, upon doing so, the attorney filed Foss's Montana judgment in California and executed against one of Blue Vault's bank accounts with EH National, obtaining a recovery of more than $46,000. Foss noted that at the time Melton told him about a Blue Vault California bank account, Foss had no knowledge of the balance in the account. Moreover, Foss reported that the money recovered from Blue Vault in California was recovered from a separate bank account, and not the account Melton identified.

¶14 Foss further argued that he did not pursue a probate action against Brown's estate because he had conducted an asset search and was unable to locate other assets owned by Brown. Subsequently, he discovered that Brown's estate was insolvent. Addressing Melton's claim that he should have appeared in the Bank's foreclosure of the ranch property, Foss claimed that he did not appear because his judgment was junior to EH National's $4 million mortgage and such an effort would have been futile as the property

was valued at considerably less than $4 million. Lastly, Foss contends that he did not amend his complaint upon Brown's death to include Erika Brown because he believed he had no meritorious basis on which to name her.

¶15 On October 13, 2015, the District Court issued its Opinion and Order, granting Foss's motion for summary judgment and denying Melton's, finding Melton's assertions that Foss failed to exhaust all other remedies available to him were unpersuasive. Relying on Foss's arguments and explanations, the District Court held:

(1) the time it took for Foss to retain California counsel and pursue execution of his Montana judgment was reasonable;

(2) Brown's estate was insolvent and without assets, and consequently any attempt by Foss to pursue probate would have been unproductive;

(3) EH National Bank's $4 million first priority over all other interests in the ranch property and Melton's recognition of the futility of fighting for his inferior judgment in the foreclosure proceeding rendered Foss's decision to not appear in the proceeding for the sole purpose of advancing a meritless argument reasonable; and

(4) any power of attorney over Brown or Blue Vault held by Erika Brown would have terminated upon Brown's death rendering enforcement action against Erika Brown futile.

¶16 Based upon these holdings, the District Court granted Foss's motion for summary judgment. Additionally, and relying upon the contract language dictating an award of attorney's fees to the "prevailing party," the court awarded Foss approximately $5,000 in attorney's fees.

¶17 Melton filed a timely appeal.

**STANDARD OF REVIEW**

¶18 We review a district court's entry of summary judgment de novo. Summary judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. *Mont. Immigrant Justice Alliance v. Bullock*, 2016 MT 104, ¶ 14, 383 Mont. 318, 371 P.3d 430 (citations omitted).

¶19 We review a district court's conclusion regarding the existence of legal authority to award attorney fees for correctness. If legal authority exists, we review a district court's order granting or denying attorney's fees for abuse of discretion. *Mont. Immigrant Justice Alliance*, ¶ 15.

**DISCUSSION**

¶20 *Did the District Court err in granting Foss's motion for summary judgment?*

¶21 Melton argues that the District Court misinterpreted the law regarding contract interpretation and conditional guarantees. He asserts that the District Court concluded that the Limited Contingent Guarantee was satisfied by the "reasonable efforts" Foss took to collect from Blue Vault and Brown. Melton counters that the language of the Guarantee was "clear, stern, and very limiting," and did "not suggest that Foss merely make 'reasonable efforts,'" but rather must "exhaust all remedies" before attempting to collect from him. Melton maintains that the District Court's failure to interpret the "agreement as written" was in error and resulted in the court's erroneous award of summary judgment.

¶22    While the Guarantee does not specify what actions Foss must take to exhaust his remedies, Melton claims that Foss should have pursued claims against Brown's estate in Montana, California, and New York. Additionally, Melton asserts that Foss was obligated to appear in the California law suit between EH National Bank and Blue Vault rather than taking a default. Lastly, Melton argues that Foss's failure to amend his complaint to add Erika Brown constituted another failure to exhaust all available remedies.

¶23    Foss relies on *Western Indus. v. Chicago Mining Corp.*, 279 Mont. 105, 926 P.2d 737 (1996), as support that his diligent efforts to collect from Blue Vault and Brown satisfied the condition precedent in the Guarantee. In *Western*, Chicago Mining Corporation (CMC) entered into a contract with Western Industries under which Western supplied labor and materials to construct a tailings pond for CMC. When CMC failed to pay Western, Western filed a construction lien in the amount of $232,730. Byron H. Weis, Robert L. Greiner, and Robert Thomlinson (collectively Guarantors) executed personal guaranties obligating themselves to pay CMC's debt providing Western "first proceed[ed] against [CMC]." *Western*, 279 Mont. at 108, 926 P.2d at 738.

¶24    Western filed an action against CMC and the Guarantors, followed by Western and CMC stipulating to entry of judgment in the amount of $196,849.72. However, before Western could collect on the judgment, CMC filed bankruptcy. Western then moved for summary judgment against the Guarantors, which the court granted. The district court entered judgment for Western in the amount of $232,730 plus pre-judgment interest for a specified period of time. *Western*, 279 Mont. at 108, 926 P.2d at 739.

9

¶25 Guarantors challenged the court's grant of summary judgment, claiming that while the facts were undisputed, Western was not entitled to judgment as a matter of law because CMC did not "default"; rather, it filed for bankruptcy. *Western*, 279 Mont. at 109, 926 P.2d at 739. We concluded that although the guaranties between Western and CMC did not specify what steps Western was required to take to satisfy the condition precedent, the guaranties did *not* require Western to proceed against CMC's collateral, nor did they require a "default" by CMC. Relying on the "well-established principles of guaranty law" set forth in 38 Am. Jur. 2d Guaranty § 108 (1968), we held that the guaranties required Western to first diligently pursue a recovery against CMC, which it did. *Western*, 279 Mont. at 110, 926 P.2d at 740.

¶26 As cited by the Court in *Western*, 38 Am. Jur. 2d Guaranty § 108 (1968) provided:

> The extent to which the creditor must pursue the debtor depends primarily upon the terms of the contract of guaranty. If the contract specifically details the action which the creditor may or must take, then the contract is controlling. When a conditional contract is not specific in its details, the liability of the guarantor [is] conditioned upon the exercise of diligence by the creditor to promote payment by the debtor.

*Western*, 279 Mont. at 110, 926 P.2d at 740.

¶27 While the above-referenced § 108 no longer exists, 38 Am. Jur. 2d Guaranty § 89 incorporates its rationale:

> Since liability under a guaranty of collection is conditioned on the creditor attempting to collect from the debtor without success, the creditor usually must proceed against the debtor before resorting to a remedy against the guarantor. When a guaranty is conditioned on collection efforts against the debtor but not specific in its details, the creditor must exercise due diligence, including in perusing [sic] legal proceedings and collecting a judgment against the debtor. However, it has also been held that the

creditor is not required to select every available remedy under the law but only to use reasonable efforts.

The guarantor is discharged if the creditor fails to take the action required under a guaranty of collection. However, mere delay by the creditor in enforcing the debtor's obligation, without injury to the guarantor, will ordinarily not release the guarantor.

The creditor's failure to pursue the debtor, when required by a guaranty of collection, does not preclude recovery against the guarantor if proceeding against the debtor would have been unavailing because of the debtor's insolvency.

38 Am. Jur. 2d Guaranty § 89 (2nd 2015).

¶28    In the case at bar, the District Court took judicial notice of the records and rulings in DV-10-638, DV-11-636, and DV-12-390.  Notably, all of these cases proceeded to resolution before this same District Court.  Additionally, while not expressly taking judicial notice, the court referenced the Estate of Brown probate proceeding in the Superior Court of Orange County, Probate No. 30-2012-00573979, noting that EH National Bank conducted considerable research and was unable to find any assets of record held by Blue Vault.

¶29    The construction and interpretation of a contract is a question of law to be determined by a court.  *Performance Mach. Co. v. Yellowstone Mt. Club, LLC*, 2007 MT 250, ¶ 39, 339 Mont. 259, 169 P.3d 394.  Additionally, § 28-3-201, MCA, provides: "[a] contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect if it can be done without violating the intention of the parties."  As noted above, the language of the Guarantee does not specifically set forth what actions Foss must undertake to "exhaust" his

11

remedies. However, as § 28-3-201, MCA, requires a "reasonable" interpretation, and because *Western* and §§ 89 and 108 of 38 Am. Jur. 2d Guaranty support Foss's action against Melton, we affirm the District Court's grant of summary judgment as it pertains to Foss's failure to participate in the foreclosure proceeding or pursue futile probate proceedings. The records of this case and the other related cases establish that Blue Vault and Brown had no assets against which Foss could collect. It has long been established that the law does not require a useless thing. *Stanford v. Coram*, 26 Mont. 285, 298, 67 P. 1005, 1010 (1902).

¶30 We further conclude that Foss's decision to forego amendment of his complaint to add Erika Brown as a party was a reasonable decision and does not constitute a failure to exhaust available remedies. In the spring of 2013, Foss learned that the FBI and the IRS, among others, were investigating Erika Brown and Blue Vault for bank fraud arising out of the falsification of information in order to obtain a $4 million bank loan from EH National. Erika Brown was subsequently indicted by the United States regarding the EH National Bank loan on the Darby ranch property. She is serving 56 months in prison and has been ordered to pay approximately $3.7 million in restitution.

¶31 We next review the District Court's findings as they pertain to Foss's actions regarding pursuit of recovery from Blue Vault's California bank accounts. As indicated above, Melton notified Foss of the existence of a Blue Vault bank account at EH National Bank and asserted that the account had sufficient cash to pay Foss's judgment. Subsequently, Foss retained an attorney and several months later successfully collected $46,300 from a separate Blue Vault account with EH National Bank. While the District

12

Court determined that Foss had not unreasonably delayed execution of his judgment in California, we conclude it was inappropriate for the court to decide this on summary judgment. While the Court's analysis of the reasonability of Foss's actions pertaining to probate and foreclosure proceedings was based upon the *legal* futility of those actions, the reasonableness of Foss's actions vis-à-vis executing on Blue Vault's bank account or accounts is a purely factual question that should be decided by the fact finder, and not on summary judgment. We therefore reverse the court on this issue and remand the matter to the District Court for further proceedings.

¶32    *Did the District Court abuse its discretion in awarding attorney's fees to Foss?*

¶33    The Promissory Note between Blue Vault and Foss contained an attorney's fees provision. Relying on this contract clause, the District Court awarded attorney's fees to Foss, as the "prevailing party," in the amount of approximately $5,000.

¶34    The "prevailing party is the one who has an affirmative judgment rendered in his favor *at the conclusion of the entire case.*" *Total Indus. Plant Servs. v. Turner Indus. Group, LLC*, 2013 MT 5, ¶ 43, 368 Mont. 189, 294 P.3d 363 (emphasis in original). Based upon our decision to remand this matter for further proceedings, Foss is not yet the prevailing party on all issues. We therefore reverse the District Court's order on attorney's fees. The District Court may reconsider the contractual award of attorney's fees based upon the outcome of the proceeding on remand.

## CONCLUSION

¶35    For the foregoing reasons, we affirm in part and reverse and remand in part for further proceedings consistent with this Opinion.

/S/ MICHAEL E WHEAT

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JIM RICE